# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 15-03005-01-CR-S-SRB |
| ) | |
| CHRISTIAN CANNON, ) | |
| ) | |
| Defendant. ) | |

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), the above-styled criminal action was referred to the undersigned for preliminary review. Defendant Christian Cannon filed a Motion to Suppress Evidence and Statements in this case. (Doc. 22.) Specifically, Defendant moves to suppress evidence derived from the search and seizure of a computer, and any evidence and statements derived therefrom as fruits of the poisonous tree. Defendant contends that: (1) law enforcement officers did not have voluntary or valid third party consent from Defendant's son to search a computer in the living room of their residence, and (2) law enforcement engaged in an unlawful search of the computer prior to gaining seeking and obtaining consent.[1] The Court held an initial hearing on the Motion on January 28, 2016, and then reopened the hearing to receive additional evidence on March 24, 2016. (*See* Docs. 33, 36, 41, 43.) Defendant was present with his attorney, David Mercer. The United States was represented by Assistant United States Attorney Casey Clark. For the reasons set forth below, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress Evidence, (Doc. 22), be **DENIED**.

---

[1] Defendant raised the second argument during the initial hearing on the instant Motion. The Motion itself only raised the issue of whether law enforcement had voluntary and valid third party consent from Defendant's son to search the computer.

## I. Findings of Fact[2]

On April 18 and 19, 2014, investigators with the Missouri State Highway Patrol ("MSHP") conducted an investigation involving the distribution of child pornography by individuals utilizing the internet protocol ("IP") address 72.172.203.192. Investigators observed the downloading and distribution of files containing child pornography utilizing the aforementioned platform. Investigators determined that the IP address was registered to Fidelity Communication International, Inc. After being served with an investigative subpoena regarding the holder of the IP address, Fidelity Communication International informed investigators that the IP address was issued to an individual at 535 Spiller Street, Lebanon, Missouri.

On July 24, 2015, MSHP investigators received a state search warrant from the Laclede County Prosecuting Attorney's Office for 535 Spiller Street. On that same day, investigators executed the search warrant. When investigators arrived at 535 Spiller Street, they made contact with Evelyn and Michael Cannon. After searching the computers at the residence and speaking with both individuals, investigators determined that neither individual possessed, received, or distributed child pornography. During the interviews, Evelyn and Michael Cannon informed investigators that their son, Defendant Christian Cannon, and their grandson, Austin Cannon, had recently moved from their residence to an address on Garfield Street in Lebanon, Missouri. They also indicated that their grandson, Austin, was currently on state probation. Investigators were later able to confirm this information. Evelyn then gave investigators directions to Defendant's new residence, and investigators were ultimately able to determine that the exact address was 252 Garfield Street in Lebanon, Missouri.

---

[2] The facts set forth herein are taken from the testimony adduced at the hearings on the instant Motion and the exhibits admitted during the hearings. Hearing transcripts appear as Docs. 36 and 43, and the parties' exhibit lists appear as Docs. 34, 35, and 42.

2

Investigators left the Spiller Street residence and went to the address at Garfield Street. Specifically, MSHP Corporal Patrick Sublette, MSHP Corporal Scott Mertens, MSHP Corporal Steve Crabtree, and Lebanon Police Department Detective Heidi Fox went to the Garfield Street residence. Upon their arrival, law enforcement officers knocked on the front door and Austin Cannon, Defendant's 18 year-old son, answered it. After making initial contact with Austin, investigators asked if they could come inside. Investigators recorded their encounters with both Austin and Defendant during this investigation, and those recordings were submitted into the record during the hearing on this matter. Investigators noted that Austin looked like he had just finished showering, because he was wearing a towel around his waist. Austin allowed investigators to enter the residence, and Corporal Sublette, Corporal Mertens, and Det. Fox proceeded inside.

Once inside, investigators asked Austin about the people who lived in the home. Austin stated that he lived there with his father, Defendant Christian Cannon, but that he was the only one at home at that time. Upon entering the house, investigators observed a desktop computer in the living room. Corporal Sublette testified that, specifically, he observed a desktop computer with the monitor. He further testified that the computer was on, and did not have a screen saver activated. Corporal Sublette testified that he was able to make out some of the contents of the desktop from a distance, including an icon that appeared to be for the peer-to-peer file sharing software ARES. Corporal Sublette noted that he had initially discovered the child pornography leading to this investigation through an ARES file-sharing program. After some introductory questioning, Austin then went to his room to put on some clothes. While Austin changed, Corporal Sublette went over to look more closely at the computer in the living room. Corporal Sublette testified that it was still on and that a screen saver was not active at the time.

3

Conversely, Defendant's expert testified that a screen saver would have been active at this time based on certain settings he observed during his examination of a forensic copy of the computer; however, he admitted on cross-examination that he could not definitively say that the screen saver function was actually active on that day. During the reopened hearing, the Government submitted the report of its expert, who had the opportunity to examine the computer. The Government's expert concluded that a screen saver would not have been activated during investigator's time at the residence. Thus, while the computer had a screen saver function, there is no evidence that the screen saver was activated when investigators observed it. When Corporal Sublette observed the desktop, he saw an ARES file-sharing program icon as well as a photo labeled "My Share," which he testified is indicative of peer-to-peer file sharing programs. Corporal Sublette discussed these observations with Det. Fox. Neither Corporal Sublette nor Det. Fox touched the computer or anything around it at this time.

When Austin returned, investigators began to ask him about the computers in the home their access to the internet, and whether he was downloading or producing child pornography. Austin defensively responded that he was not downloading or producing child pornography. The officers continued to ask him questions, and Austin stated that the computer in the living room belonged to his father. He stated that he also had a desktop computer in his bedroom. Investigators then asked for consent to search the computer in Austin's bedroom, which Austin gave them. Corporal Sublette testified that by this time Austin had calmed and was no longer defensive. When Corporal Sublette began the search of the computer, Austin initially stayed in the room. Austin stated he needed a cigarette, and Corporal Sublette told him he was free to stay and watch him search the computer or go outside to smoke. Austin remained in the room for

4

some time and then eventually left the room, presumably to smoke. Investigators eventually determined that the computer in Austin's room did not have files containing child pornography.

When Austin came back inside the residence, investigators began asking him questions about the computer in the living room. Austin again indicated that it belonged to his father. Corporal Sublette then asked Austin whether he uses the computer. Austin told investigators that he did use it, though not regularly. Austin explained that, for example, he would use the computer in the living room to check his email if he had a video game running on the computer in his room. Austin further stated that his cousin, Defendant's nephew, sometimes used the computer in the living room. Though Austin indicated that his father did not like him using the computer in the living room, he also stated that nothing prevented him from using it and that his father knew that he occasionally used it. At that time, Corporal Sublette believed Austin had the authority to give investigators consent to search the computer. He asked if investigators could search the computer in the living room, and Austin then gave them consent to search it.

The computer was not password protected, and so Corporal Sublette began a search for files including terms that are indicative of child pornography. The search generated several files including such terms. At that point, Corporal Sublette stopped his search of the computer. He did not open any files, but instead contacted the appropriate authorities in Laclede County to get a search warrant. Corporal Sublette obtained a search warrant and, approximately one hour after the initial search of the computer in the living room, came back to 252 Garfield Street. During the second visit to the 252 Garfield Street, Defendant arrived at the residence. Corporal Sublette spoke with Defendant about the computers in the home. Defendant indicated that the computer in the living room was his. Additionally, Defendant stated that he was aware that his son, Austin, and his nephew used the computer and played video games on it.

5

The search of the computer executed pursuant to the warrant revealed that it had several files containing images of child pornography and led to the charges in this case.

## II. Conclusions of Law

Defendant moves to suppress evidence and statements on two grounds. First, he contends that the third-party consent of Austin Cannon is invalid. Specifically, he argues that Austin did not have the authority to consent to a search. He additionally argues that Austin was coerced and therefore, even if he had the authority to consent, his consent was not voluntary. Second, Defendant argues that officers conducted an illegal search of the computer in the living room by deactivating the screen saver. While Defendant did not raise this argument in his briefing and did not offer good cause as to why he did not, which would generally indicate a waiver of the issue, the Court addresses it here nonetheless. *See* Fed. R. Crim. P. 12(b)(3)(C) (requests to suppress evidence "must be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits."); Fed. R. Crim. P. 47(a) ("A motion must state the grounds on which it is based and the relief and order sought."); *see also* Fed. R. Crim. P. 12(c) ("a court may consider the defense, objection, or request if the party shows good cause."); *United States v. Dunn*, 723 F.3d 919, 927 (8th Cir. 2013) (holding that the defendant's argument that wiretap evidence should be suppressed was waived because defendant "did not raise the issue in his pretrial motion to suppress[.]").

The Fourth Amendment protects citizens from unreasonable searches and seizures by the government. *See* U.S. Const. amend. VI.; *United States v. Va Lerie*, 424 F.3d 694, 701 (8th Cir. 2005). Generally, evidence found as a result of an unlawful search or seizure, and the fruits therefrom, cannot be used against a defendant and must be suppressed. *United States v. Riesselman*, 646 F.3d 1072, 1078-79 (8th Cir. 2011). However, searches conducted pursuant to

6

Case 6:15-cr-03005-SRB   Document 44   Filed 04/19/16   Page 6 of 11

established and well-delineated exceptions do not require a warrant and are thus not unreasonable. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). For example, no warrant is required if a party consents to a search. *See United States v. Farnell*, 701 F.3d 256, 262-63 (8th Cir. 2012). Similarly, a third party having "joint access or control" over mutually-used property may lawfully consent to a warrantless search of that property. *See United States v. Clutter*, 674 F.3d 980, 983 (8th Cir. 2012). Where a third party lacks actual or common authority to consent to a search of jointly-used property, it is reasonable for law enforcement officers to rely upon the third-party's apparent authority to consent. *Clutter*, 674 F.3d at 983; *see also United States v. Amratiel*, 622 F.3d 914, 915 (8th Cir. 2010). Courts examine several factors when determining whether a third party exercised actual or apparent common authority over the contents of a computer, including: (1) whether the consenting third party in fact used the computer; (2) whether it was located in a common area accessible to other occupants of the premises; and (3) whether the defendant's files were password protected. *Clutter*, 674 F.3d at 984. The third factor is often considered the most important. *Id.*

As to Defendant's argument regarding Austin's authority to give consent, the record shows that Austin had actual authority to give such consent. First, Austin admitted that he did use the computer. Though he did not use it frequently and his father did not like him to use it, he had the ability to access it. Defendant also admitted that he knew his son used the computer occasionally. As such, Austin had implicit permission to use the computer and was in fact using it. *See Clutter*, 674 F.3d at 984. Second, the computer was located in the living room, a common area. The fact that Austin and Defendant's nephew also occasionally used the computer, with Defendant's knowledge of that use, supports the theory that the computer was in fact in a common area available for use by individuals other than Defendant. Third, the

7

computer was not password protected. Neither Austin nor investigators ever indicated or came across such protections. Those factors together show that Austin had the actual authority to consent to a search of the computer. Even if Austin did not have permission – implicit or otherwise – to use the computer or did not use it, it was reasonable for investigators to believe that Austin had the authority to give consent based on his answers to their questions. *See id*. ("the Fourth Amendment is not violated if the officers reasonably relied on the third party's apparent authority to consent . . . because the Amendment's reasonableness requirement demands of government agents 'not that they always be correct, but that they always be reasonable.'") (internal citations and quotations omitted).

When determining whether consent was given voluntarily and without coercion, courts examine the totality of the circumstances. *United States v. Briley*, 726 F.2d 1301, 1304 (8th Cir. 1984). These factors include: (1) age; (2) general intelligence and education; (3) whether the individual was under the influence of drugs or alcohol; (4) whether he was informed of the *Miranda* rights; and (5) whether he had experienced prior arrests and was thus aware of the protections the legal system affords suspected criminals. *United States v. Esco*bar, 389 F.3d 781, 785 (8th Cir. 2004). Environmental factors are also considered, including: "1) the length of time one was detained, 2) whether the police threatened, physically intimidated, or punished the suspect, 3) whether the police made promises or misrepresentations, 4) whether the suspect was in custody or under arrest when the consent was given, 5) whether the consent occurred in a public or a secluded place, and 6) whether the suspect stood by silently as the search occurred." *Id.* (citation omitted). "[T]he burden is on the government to show that the consent was freely given." *Briley*, 726 F.2d at 1304 (citation omitted); *see also United States v. Brave Heart*, 397 F.3d 1035, 1040 (8th Cir. 2005). Specifically, "the government must show that a reasonable

8

person would have believed that the subject of a search gave consent that was the product of an essentially free and unconstrained choice, and that the subject comprehended the choice that he or she was making." *Escobar*, 389 F.3d at 785 (quotation omitted).

The evidence of record addresses nearly all of these factors. Austin was an eighteen year old adult at the time of the interview. The transcript and recording show that he spoke clearly, coherently, and logically. Additionally, he was not under the influences of any substances. While he was not informed of his *Miranda* rights, he was on state probation and thus had experience with the protections afforded to him by the legal system.

With regards to the environmental factors, Austin allowed investigators to enter the residence. Defendant suggests that investigators intimidated Austin by accusing him of downloading or possessing child pornography. He further argues that Austin was nervous because he asked to go smoke a cigarette. Though defensive about those accusations, Austin clearly denied those assertions and continued to talk to investigators, who indicate that he calmed down not long after investigators prompted him about child pornography. Additionally, there is no evidence of record indicating that Austin wanted to smoke a cigarette in order to calm himself down. Rather, Defendant merely speculates that Austin was nervous because people sometimes smoke cigarettes when they are nervous. However, the evidence of record, specifically Corporal Sublette's testimony, indicates that even after Austin knew he could leave to smoke a cigarette, Austin stayed with officers while they searched the computer in his room for some time before he leaving the room. At no point did the investigators ever threaten, physically intimidate, or punish Austin. Further, investigators did not promise or make any false representations to Austin. Finally, the contact with Austin lasted only about 30 minutes before he gave consent, he remained in his own residence and moved freely throughout it, and he was never placed under

arrest or taken into custody at any time during his encounter with investigators. These facts show that Austin comprehended the choice he made in giving investigators consent to search the computers in his home, and gave such consent freely and unconstrained. Therefore, Austin's third-party consent was voluntary and not coerced.

As noted, Defendant raised a new argument during the hearing on the instant Motion to Suppress: that investigators deactivated an enabled screen saver on the computer prior to obtaining consent from Austin to search it, thus resulting in a warrantless search of the desktop in violation of the Fourth Amendment. Defendant primarily relies on the testimony of his expert given during the initial hearing on this matter. At that time, the expert stated that certain settings for this living room computer were such that a screen saver that obscured the desktop would have been active at the time investigators took a closer look at the computer while Austin changed clothes. However, Defendant's expert admitted that he could not say for certain that the screen saver function was operating properly and active on that day at that time. Moreover, investigators testified that there was no screen saver enabled on the computer at any time during their search. Because of the factual dispute, the Court concluded it was necessary to reopen the hearing after the parties had an opportunity to investigate this matter further.

During the reopened hearing, the Government's expert report was submitted. (*See* Doc. 39-1; Doc. 42.) That report stated that "the screen saver for [the living room computer] was not active and had never been activated." (Doc. 39-1.) As such, the undisputed evidence shows that the screen saver was not active during the time investigators were at the 252 Garfield Street residence. As such, Defendant's argument fails and the Court need not discuss whether deactivation of a screen saver would constitute a violation of the Fourth Amendment.

10

Because Austin gave valid consent and the search of the computer was not in violation of the Fourth Amendment, the evidence searched and seized need not be suppressed. Further, any evidence resulting from or statements made after that search and seizure need not be suppressed as they are not fruits of the poisonous tree.

**III.    Recommendation**

Therefore, based on all the foregoing, and pursuant to 28 U.S.C. § 636(b) and Local Rule 72.1 of the United States District Court for the Western District of Missouri, the undersigned hereby **RECOMMENDS** that Defendant's Motion to Suppress, (Doc. 22), be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: April 19, 2016